# WALTER BURGESON v. VALERA S. PUCK.

144 N. W. (2d) 52.

July 8, 1966—No. 39,963.

*Emmett F. Tighe,* for appellant.

*Erickson, Zierke, Kuderer & Utermarck,* for respondent.

ROGOSHESKE, JUSTICE.

Appeal from a judgment in favor of plaintiff and against defendant in the amount of $4,107.50.

Initially, plaintiff sued defendant for the conversion of a quantity of soybeans and corn raised on premises owned by defendant and leased by her to plaintiff for the 1961-1962 crop season. Defendant counterclaimed for damages claimed to be due her from plaintiff under the lease. By agreement, the case became one for an accounting between the parties. Although certain issues of fact were submitted to a jury which heard the evidence, the ultimate disposition of the case was by the trial judge who made findings of fact and conclusions of law in support of an order for the judgment.

Upon appeal defendant contends that the judgment should be reversed for these reasons:

(1) The trial court erroneously refused to accept the landlord's claim that she was entitled to 6,000 bushels of corn raised on the leased premises during the term of the lease as repayment in kind for corn supplied by her and fed to livestock as contemplated by the lease.

(2) The trial court erred in ruling as a matter of law that plaintiff should not be charged for the loss of 97 hogs, 70 pigs, and 8 calves, which, according to plaintiff, died while in his possession during the term of the lease.

(3) The trial court erred in failing to charge plaintiff for damage to the premises resulting from operations conducted by him.

■ The leased premises consist of 400 acres of farmland in Watonwan County, Minnesota. The term of the lease was from March 1, 1961, to March 1, 1962. The lease provides in part:

"Lessor may at her option purchase and place on said farm feeder cattle and feeder hogs up to but not exceeding what can be handled on said farm at one time. Second party is to do all work in connection with caring for said cattle and hogs. Each party is to furnish one half of the cost

of feed, either furnishing one half of the feed or by paying one half the cost of the feed. Upon the sale of said feeder stock first party is to receive her original investment, and the profit over and above the cost of the cattle and hogs, and after deducting the cost of any feed purchased is to be divided one half to each of the parties hereto."

At the inception of the lease Mrs. Puck had 7,600 bushels of corn on the farm. Mr. Burgeson brought 1,600 bushels of his corn to the leased premises. All of it was used to feed livestock. Nine thousand bushels of corn was produced during the crop season. Defendant contends, in effect, that since she supplied 6,000 bushels of corn for use as feed in excess of the quantity supplied for that use by Burgeson she became entitled to re-payment on a bushel-for-bushel basis from the corn raised on the farm in 1961. The trial court allowed as credit to the plaintiff the amount by which the *value* of the 7,600 bushels provided by defendant exceeded the *value* of the 1,600 bushels provided by the lessee. This method of calculation operated to the lessor's disadvantage because of a jury find-ing, accepted by the trial judge in his findings, that the value of the corn supplied by Mrs. Puck was only 27 cents per bushel while that supplied by Burgeson was 90 cents a bushel and that raised on the farm in 1961 was $1 per bushel. Since valuations placed on the corn by the trial judge in his findings are supported by the evidence, the question reduces itself to whether defendant, by the terms of the lease, was entitled to reimburse-ment on a bushel-for-bushel basis notwithstanding the disparity between the worth of the corn supplied by her, the corn supplied by plaintiff, and that raised on the premises. We agree with the trial court that the lan-guage of the lease on this question is not entirely clear and that, faced with this ambiguity, it is reasonable to imply an intent by the parties that each be credited for feed furnished on the basis of its reasonable value as found from the facts.

■ The trial judge, being satisfied that certain livestock placed on the farm by defendant had died during the term of the lease, rejected defendant's theory that it was the lessee's burden to account for the value of the livestock or show that its loss was not due to his negligence.

At the close of the testimony, these proceedings took place:

"Mr. Kuderer [attorney for plaintiff]: The next motion I have is with respect to hog loss, whether it is 80 head or however many it is, and also with respect to the second farrowing, and also with respect to the seven head of calves that are missing, and the one heifer, and we move the Court for summary disposition to withdraw this issue from the case and grant judgment in favor of the plaintiff on these issues on the grounds that these issues must necessarily have been founded in negligence, if at all, or else that there was a willful taking on the part of the plaintiff of property that belonged to the defendant, and that in either case she first of all has entered no evidence into the record as to what an ordinarily reasonable and prudent person should do under the same or similar circumstances. There is no evidence in the record that the plaintiff, Walter Burgeson, was negligent in the care of these hogs * * *. There is no evidence that such negligence existed, that it was a proximate cause, * * * .

\* \* \* \* \*

"The Court: It is my feeling that the motion should be granted for the reason that it seems to me that the plaintiff has satisfactorily met the burden upon him to account for these animals concededly in his possession by his testimony, which stands uncontroverted in the record that they died, and by the total lack of any evidence of any nature recalled by the Court as to any other disposition of them. I do not think there would be anything here upon which a jury could base a contrary finding. I do not understand that there is any res gestae—res ipsa, anything of that kind, involved in the custody of animals under these circumstances."

The position of plaintiff in this court is stated in his brief as follows:

"In the absence of any evidence to the contrary, showing that the plaintiff had misappropriated or mishandled the hogs in some other manner, there was only one permissible finding in this case. The Court so held when it ruled summarily with reference to the issue of the missing hogs and calves."

The legal relationship between the parties with respect to the livestock

was that of bailor and bailee for the mutual benefit of the parties to the agreement.[1]

The rule to be applied in such situations, set out in Zanker v. Cedar Flying Service, Inc. 214 Minn. 242, 7 N. W. (2d) 775 (recently approved in National Surety Corp. v. Todd County Dairy Co-op. 269 Minn. 298, 130 N. W. [2d] 511), is that when a bailment has been proved, the bailee has the burden of establishing that his negligence did not cause the loss of the bailed property. This is not merely the burden of going forward with the proof, but the burden of establishing due care on his part by a preponderance of the evidence.

The record does contain some evidence which might support a finding of fact to the effect that Burgeson exercised the care of a reasonably prudent person in the handling of the livestock placed in his care and custody. But his explanation of what caused the death of the livestock does not fulfill his burden of proof as a matter of law. Therefore, we feel that there should be a new trial of this issue, particularly when the record shows that the veterinarian, who was in the best position to give information with respect to the cause of the loss of most of the animals, was not produced as a witness.[2]

■ By finding that plaintiff was entitled to compensation for the re-

---

[1] See, White v. Sullivan, 174 Minn. 549, 219 N. W. 908; Jessup v. American Railway Exp. Co. 175 Minn. 617, 221 N. W. 240; Noel v. Cowan, 80 Mont. 258, 260 P. 116; Mahoney v. Citizen's Nat. Bank, 47 Idaho 24, 271 P. 935; Wetzel v. Deseret Nat. Bank, 30 Utah 62, 83 P. 570. See, also, Annotation, 32 A.L.R. 857; Note, 6 Wyo. L.J. 290.

[2] Upon interrogation by defendant's attorney, Mr. Burgeson testified:
"Q. We agree on this, it was 87 hogs short and you say they died?
"A. Yes.
"Q. When did they die?
"A. At the time they was sick.

    *   *   *   *   *

"Q. Does the vet know that?
"A. Yes.
"Q. Does he know you lost 87 pigs?
"A. I imagine he does.
"Q. Are you going to call the vet here to testify to that?
"A. I think so."

moval of trees, the rearrangement of drainage facilities on the land, and the regrading for landscape purposes in the vicinity of the farm buildings, the trial court in effect found as a fact that defendant was not entitled to compensation for damage allegedly resulting from the manner in which this work was done. We believe this finding to be sustained by the evidence.

Other and incidental claims of error asserted by defendant warrant these comments. Under Rule 39.02, Rules of Civil Procedure, a trial court may use an advisory jury even though the action is not triable by a jury as of right. See, Wormsbecker v. Donovan Const. Co. 251 Minn. 277, 87 N. W. (2d) 660. A new trial of the issues would not be required on the basis of the proffered newly discovered evidence. See, Rule 59.01(4); Minder v. Peterson, 254 Minn. 82, 93 N. W. (2d) 699.

Affirmed in part; remanded for further proceedings with respect to limited issue.