IN THE COURT OF APPEALS OF TENNESSEE

**FILED**

**February 5, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| JOHN L. MILLER, | ) C/A NO. 03A01-9707-CV-00270 |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| v. | ) ANDERSON COUNTY CIRCUIT COURT |
| | ) |
| | ) |
| | ) |
| | ) |
| SCOTT D. WILLIAMS, | ) |
| | ) HONORABLE WILLIAM E. LANTRIP, |
| Defendant-Appellee. | ) CHANCELLOR, By Interchange |

For Appellant

JESS D. CAMPBELL
Campbell & Dawson
Knoxville, Tennessee

For Appellee

ALBERT J. HARB
Hodges, Doughty & Carson
Knoxville, Tennessee

JOHN W. BUTLER
Butler, Vines & Babb
Knoxville, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                    Susano, J.

This appeal questions the adequacy of a jury's verdict. The plaintiff, John L. Miller ("Miller")[1], alleged in his complaint that he sustained physical and emotional injuries and medical expenses when his automobile was struck from behind by a vehicle driven by the defendant, Scott D. Williams ("Williams").[2] After Williams admitted liability at trial, the jury awarded Miller damages of $45,000. Miller then filed a motion for an additur or a new trial. The trial court denied his motion, and this appeal followed. The sole issue[3] on this appeal is whether the trial court erred in failing to suggest an additur or grant a new trial due to the alleged inadequacy of the jury's award.

I

In this case, we must decide if the record contains "material evidence to support the [jury's] verdict." Rule 13(d), T.R.A.P.; *Coffey v. Fayette Tubular Products*, 929 S.W.2d 326, 331 n.2 (Tenn. 1996); *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980); *Pettus v. Hurst*, 882 S.W.2d 783, 788 (Tenn.App. 1993); *Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630, 640 (Tenn.App. 1993). Because Miller asserts that the jury's award is insufficient, our focus is on the "lower limit" of the "range of reasonableness." *Foster v. Amcon Int'l, Inc*., 621 S.W.2d 142, 146 (Tenn. 1981). In the *Foster* case, the Supreme Court stated

---

[1]Miller's wife, Margie Miller, was also a plaintiff in this case. The jury awarded her a judgment for $5,000. That judgment has not been appealed.

[2]Also named as a defendant in the complaint was Chad Busby, a passenger in the vehicle driven by Williams. The complaint against Busby was voluntarily dismissed.

[3]The Court of Appeals "does not have the authority to grant an additur" under T.C.A. § 20-10-101. *Wilkerson v. Altizer*, 845 S.W.2d 744, 749 (Tenn.App. 1992); *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980).

2

that

> [a] reasoned examination of the credible
> proof of damages leads to a determination of
> the figure beyond which excessiveness or
> inadequacy lies and beyond which there is no
> evidence, upon any reasonable view of the
> case, to support the verdict.

*Id.* In reviewing the adequacy of the jury's award, we note that

> [the determination of] the amount of
> compensation in a personal injury case is
> primarily for the jury, and that next to the
> jury, the most competent person to pass on
> the matter is the trial judge who presided at
> the trial and heard the evidence.

*Id.* at 143-44; *Coffey*, 929 S.W.2d at 331 n.2.

The effect of a trial court's approval of the amount of

a jury award is clear:

> ... the trial judge's approval of the amount
> of the jury's verdict invokes the material
> evidence rule, just as it does with respect
> to all other factual issues upon which
> appellate review is sought....
>
> \*    \*    \*
>
> "[a]ll of the evidence in the record that
> tends to support the amount of the verdict
> should be given full faith and credit upon
> appellate review."

*Poole*, 604 S.W.2d at 54 (citing *Ellis v. White Freightliner*

*Corp.*, 603 S.W.2d 125 (Tenn. 1980)).  Thus, our analysis is

limited to a determination of whether the record reflects

3

material evidence demonstrating that the jury's award is "at or above the lower limit of the range of reasonableness, giving full faith and credit to all of the evidence that tends to support that amount." **Poole,** 604 S.W.2d at 54. We are required to take the strongest legitimate view of all the evidence, including all reasonable inferences therefrom, to sustain the verdict; to assume the truth of all the evidence that supports it; and to discard all evidence to the contrary. **Id**. In this analysis, we do not weigh the evidence, nor do we determine the credibility of the witnesses. **Id.**

II

The facts relative to the accident itself are not in dispute. On April 4, 1995, as Miller was stopped at a traffic light, his vehicle was struck from behind by Williams' vehicle, causing Miller's vehicle to collide with a van in front of him. Williams admitted that the accident was his fault and stipulated to liability at trial.

Although Miller was awake and alert at the scene of the accident, he was transported to the hospital by ambulance. Among other things, he was treated for dizziness and pain in his back, neck, and right knee. Miller was released from the hospital after two and a half days.

Prior to the accident, Miller had suffered from various neck, back and knee problems. The record indicates that between August, 1988, and the time of the accident, he was treated by

4

several physicians for these problems.  Miller had also been involved in a previous automobile accident in April of 1994, causing him to seek treatment for neck and shoulder pain. Furthermore, Miller had complained to a physician in January, 1995, of pain in his right knee, approximately three months before the accident.

The parties present competing theories regarding the relationship of Miller's pre-existing conditions to the injuries he sustained in the April, 1995, accident.  Miller contends that the accident caused new injuries and substantial aggravation of his pre-existing conditions.  He insists that the jury's verdict is grossly inadequate to compensate him for his pain, suffering and medical expenses.  Williams, on the other hand, argues that Miller's pre-existing neck, back and knee problems were extensive.  He maintains that the jury correctly determined that the aggravation caused by the accident was less severe than Miller claimed.

Following his release from the hospital, Miller received treatment from a chiropractor, Dr. Ronald Mabry.  He later was treated by a medical doctor, Dr. Gilbert Hyde, who performed surgery on Miller's knee.  In May, 1995, Miller began seeing another physician, Dr. John Purvis, for back, neck and arm pain.  He also began complaining of pain in his hands.  Dr. Marvin Cohn, who also treated Miller, testified that the pain in Miller's hands was not directly related to the accident, but instead was a result of arthritis that Miller had experienced for several years.  Following further treatment, Dr. Mabry and Dr.

5

Hyde subsequently informed Miller that he could return to work. However, Miller was involved in another automobile accident in December, 1995. Subsequent to the December, 1995, accident, Dr. Purvis performed neck surgery on Miller.

At trial, each side submitted material evidence in support of its position. Miller introduced medical bills in the aggregate amount of $44,585.42. He also offered the testimony of his physicians in support of his contention that the accident had severely aggravated his pre-existing medical conditions. Williams, on the other hand, presented evidence indicating that much of Miller's pain and suffering resulted from conditions that pre-dated the accident and that the extent of the injuries that actually resulted from the accident was not very severe. For example, the record indicates that on the day after his release from the hospital, Miller was able to go to his place of employment, Dean Stallings Ford, talk with other employees, and drive home in one of the dealership's cars. Furthermore, despite claiming that he was unable to work, Miller was able to continue preaching at his church. There is also evidence that Miller was less than candid with his post-accident physicians regarding his prior medical history.

It is clear from the briefs and record that the parties presented the jury with greatly contrasting characterizations of the testimony regarding Miller's injuries. In limiting Miller's recovery to $45,000, the jury obviously gave credence to testimony indicating that some of Miller's pain and suffering was not caused by the April, 1995, accident. We note again that

6

determinations regarding the credibility of the witnesses fall within the purview of the jury. *Reynolds v. Ozark Motor Lines, Inc.*, 887 S.W.2d 822, 823 (Tenn. 1994). As we have previously stated, we are not in a position to assess credibility. *Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980).

### III

As stated earlier, in evaluating the jury's award, we consider only the evidence supporting that award and disregard all evidence to the contrary. *Poole,* 604 S.W.2d at 54. Upon review of the record in this case, we find that there was material evidence to support the jury's award. Rule 13(d), T.R.A.P. Given the evidence in the record regarding the nature and extent of Miller's pre-existing conditions, and the testimony of his post-accident physicians, the jury could have reasonably concluded that the aggravation of Miller's injuries as a result of the accident was not as severe as Miller claimed. We thus cannot say that the jury's award falls below the lower limit of the range of reasonableness. *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142, 146 (Tenn. 1981); *Poole*, 604 S.W.2d at 54.

Accordingly, the judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant and his surety. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed there, all pursuant to applicable law.

_____

7

Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, P.J.


_____
Don T. McMurray, J.